1  Rose F. Luzon (SBN 221544)
   SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
2  401 West "A" Street, Suite 2350
   San Diego, CA 92101
3  Telephone: (619) 235-2416
   Facsimile: (619) 234-7334
4  Email: rluzon@sfmslaw.com

5  Counsel for Plaintiffs Jeffrey Harper and Zachary Kummer
   [Additional Counsel Listed on Signature Page]

6

7            IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9  _____          Civil Action No.

10 JEFFREY    HARPER   and   ZACHARY
   KUMMER, individually and on behalf of all
11 others similarly situated,                              **FILE BY FAX**

12              Plaintiffs,                 **CLASS ACTION COMPLAINT**

13 v.

14 SONY  COMPUTER    ENTERTAINMENT
   AMERICA, INC.,                           **DEMAND FOR JURY TRIAL**

15              Defendant.
   _____

16

17        Plaintiffs, Jeffrey Harper and Zachary Kummer ("Plaintiffs"), bring this

18 action against Defendant, Sony Computer Entertainment America, Inc. ("Sony" or

19 "Defendant"), individually and behalf of all others similarly situated, and allege as

20 follows upon personal knowledge as to themselves, and as to all matters upon

21 information and belief:

22                              INTRODUCTION

23        1.    This is a class action lawsuit brought by Plaintiffs on behalf of

24 themselves and a proposed class of current and former Sony PlayStation®3 ("PS3"

25 or "Console") owners that have had their "Install other OS" feature ("OS Feature")

26 intentionally disabled by Sony.

27        2.    PS3 is a video game console that was first introduced on or about

28

                              -1-

November 17, 2006 by Sony with the OS Feature. This allowed users to install other operating systems on the Console and thereby expand the PS3's capabilities to that of a personal computer.

3.  On or about April 1, 2010, Defendant released a PS3 firmware update called 3.21 ("Update 3.21"), which numerous PS3 owners downloaded onto their Consoles. The installation of Update 3.21 had the effect of disabling the OS Feature. Sony purportedly wanted the OS Feature disabled to address unspecified "security concerns." Upon information and belief, Sony failed to adequately disclose that downloading and/or installing the Update 3.21 would remove this important feature from consumers' Consoles.

4.  Sony's decision to introduce the Update 3.21 places Plaintiffs and class members in an untenable position. PS3 owners that do not install Update 3.21 can no longer access the PlayStation Network ("PSN"), play games online, access online features, or play PS3 games and/or Blu-Ray discs that require Update 3.21. On the other hand, PS3 owners that do install Update 3.21 lose all access to the OS Feature and are effectively locked out from accessing approximately 10 gigabytes ("GB") of memory on their PS3's internal hard drive.

5.  Plaintiffs and other purchasers have paid for the advertised features of the PS3, including the OS Feature, that have been involuntarily removed by Sony through Update 3.21.

6.  As a result of Defendant's unfair, deceptive and/or fraudulent business practices, owners of the PS3, including Plaintiffs, have suffered an ascertainable loss of money and/or property and injury in fact. Plaintiffs and the proposed Class (as defined below), hereby seek damages and other relief as this Court may see fit to order.

-2-
CLASS ACTION COMPLAINT

JURISDICTION AND VENUE

7.    This Court has diversity jurisdiction of this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Sony's corporate headquarters and principal place of business are located within this district. Additionally, Defendant has advertised in this district and has received substantial revenue and profits from its sales of products in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

THE PARTIES

A.    Plaintiff Harper

9.    Plaintiff, Jeffrey Harper ("Harper"), is a resident and citizen of the State of Michigan, residing in the city of Berkley.

10.    In or around January 2007, Harper purchased a PS3 designed, advertised, and distributed by Sony.

11.    Subsequent to his purchase, Harper utilized his PS3, along with the OS Feature, to play on-line games, watch Blu-Ray discs, access email, access the internet, and conduct general word processing.

12.    On or about April 1, 2010, Harper was alerted by Sony that Update 3.21 was available and should be installed on his PS3. As a result, Harper downloaded Update 3.21 and was thereafter unable to access the OS Feature and

-3-

became locked out from accessing 10 GBs of memory on the Console's internal hard drive.

13.     Harper purchased (and still owns) this product for personal, family and/or household uses.

14.     Harper has suffered an injury in fact as a result of the unlawful conduct alleged herein by Defendant.

**B.     Plaintiff Kummer**

15.     Plaintiff, Zachary Kummer ("Kummer"), is a resident and citizen of the State of Florida, residing in the city of Tampa.

16.     In or about May 2008, Kummer purchased a PS3 designed, advertised, and distributed by Sony.

17.     Subsequent to his purchase, Kummer utilized his PS3, along with the OS Feature, to play on-line games, watch Blu-Ray discs, access email, access the internet, and conduct general word processing.

18.     On or about April 1, 2010, Kummer was alerted by Sony that Update 3.21 was available and should be installed on his PS3. As a result, Kummer downloaded Update 3.21 and was thereafter unable to access the OS Feature and became locked out from accessing 10 GBs of memory on the Console's internal hard drive.

19.     Kummer purchased (and still owns) this product for personal, family and/or household uses.

20.     Kummer has suffered an injury in fact as a result of the unlawful conduct alleged herein by Defendant.

**C.     The Defendant**

21.     Sony develops, markets, and distributes PlayStation gaming systems, including the PS3 model at issue in this litigation. Defendant is an entity incorporated under the laws of the State of Delaware, and maintains North

American headquarters in Foster City, California. Sony, thus, is a citizen of Delaware and California. A copy of the requisite Declarations pursuant to Cal. Civ. Code § 1780(c) are attached collectively as Exhibit "A."

22.     Upon information and belief, decisions regarding the development, marketing, and distribution of the PS3 Console at issue in this litigation were performed exclusively by Sony.

### INTRADISTRICT ASSIGNMENT

23.     Pursuant to Local Rules 3-2(c) and 3-5(b), this action should be assigned to the San Francisco Division of the Northern District of California because Sony resides in the County of San Mateo and, upon information and belief, a substantial part of the acts, events, or omissions giving rise to Plaintiffs' claims were performed in San Mateo County.

### FACTUAL ALLEGATIONS

24.     Sony was founded in 1994 as the North American division of Sony Computer Entertainment, Inc., and according to its website, is responsible for "the continued growth of the PlayStation® market in the United States and Canada."

25.     The PlayStation® ("PS") brand is a line of computer game consoles created and developed by Sony. The PS was first introduced in Japan on or about December 3, 1994, with a subsequent release in the United States on September 5, 1995.

26.     The original PS console possessed a number of features. In addition to playing games, it had the ability to read and play audio CDs through use of a CD player contained within the unit. The CD player had the ability to shuffle the playback order, play the songs in a programmed order, and repeat one song or the entire disk. More than 100,000 units were sold during its debut weekend and more than one million units were sold within the first six months.

27.     The PS was the first "computer entertainment platform" to ship 100

1  million units, a milestone reached nine years and six months after its initial launch.
2  Its successor -- the PlayStation®2, released in 2004 -- is currently the best-selling
3  game console to date, with over 140 million units sold as of September 30, 2009.
4      28.    The PS3 is the third and current iteration of the PlayStation® series
5  ("Series"), having been released on November 17, 2006 in the United States,
6  approximately six days after its release in Japan. The PS3 was the first console in
7  the Series to introduce the use of motion controls in games, along with other
8  features such as Blu-Ray disc capability and high-definition resolution. Two
9  hardware configurations were initially offered in the Console: a 20 GB model and a
10 60 GB model, priced at $499 and $599, respectively.
11                    Sony Releases The OS Feature
12      29.    The PS3 was the first in the Series to offer an OS Feature within the
13 Console at the time of sale. This allowed Linux operating systems to be installed
14 alongside the main system software on the PS3.
15      30.    Defendant does not market the PS3 solely for use as a video game
16 console. Indeed, Defendant's website provides, "[t]here is more to the
17 PLAYSTATION®3 (PS3™) computer entertainment system than you may have
18 assumed. In addition to playing games, watching movies, listening to music, and
19 viewing photos, you can use the PS3™ system to run the Linux operating system.
20 By installing the Linux operating system, you can use the PS3™ system not only as
21 an entry-level personal computer with hundreds of familiar applications for home
22 and office use, but also as a complete development environment for the Cell
23 Broadband Engine™ (Cell/B.E.)."[1]
24      31.    The OS Feature allowed PS3 users to operate word processing
25 software, spreadsheet software, and email software through other operating
26 systems, in addition to being able to navigate multiple web browsers
27 _____
28 [1] http://www.playstation.com/ps3-openplatform/index.html

CLASS ACTION COMPLAINT

1  simultaneously. The OS Feature allowed users to expand the capabilities of those
2  offered in previous PS models to that of a personal computer.

3      32.    In May 2006, Phil Harrison, President of Sony Computer
4  Entertainment's Worldwide Studios at the time, explained that the Linux-based
5  operating system on the PS3's hard drive would have enough processing power and
6  non-gaming functionalities to render traditional PCs moot in terms of home
7  entertainment. Further, he was quoted as saying "[w]e believe that the PS3 will be
8  the place where our users play games, watch films, browse the Web, and use other
9  [home] computer functions. The PlayStation 3 is a computer. *We do not need the*
10  *PC.*" [2]

11     33.    In February 2007, Phil Harrison stated in an interview with a
12  *Newsweek* videogame journalist that "[o]ne of the most powerful things about the
13  PS3 is the 'install Other OS' option." [3]

14     34.    According to one OS Feature instruction manual, "it was fully
15  intended that you, a PS3 owner, could play games, watch movies, view photos,
16  listen to music, and run a full-featured Linux operating system that transforms
17  your PS3 into a home computer." [4]

18     35.    To install Linux on the PS3, users must first split the PS3 hard drive
19  into two partitions so that the GameOS and Linux can run on dual partitions.[5]
20  Many users also acquired a USB keyboard and mouse to run the operating system.

21     36.    Sony's removal of the OS Feature would render users locked out of
22  that section of the hard drive previously partitioned for Linux – approximately
23  10GB. As explained by Sony, "[i]f you currently use the 'Other OS' feature and you
24  wish to update to system software 3.21, make sure you back-up any data stored

25

26  [2] http://www.gamespot.com/news/6152133.html (emphasis added).
27  [3] http://kotaku.com/235049/20-questions-with-phil-harrison-at-dice
    [4] http://www.gamespot.com/news/6162316.html?tag=result;title;0
28  [5] http://www.gamespot.com/news/6162316.html?tag=result;title;0

-7-

1  within the hard drive partition used by the 'Other OS,' as they will not be able to
2  access that data following the update." [6]

3      37.    The OS Feature was an integral and material component of the PS3
4  that many owners considered and were influenced by in their decision to purchase
5  the Console.

6      38.    Sony failed, at the time of purchase or any time prior to purchase, to
7  adequately disclose to Plaintiffs and Class members that it was in any way
8  reserving the right to remove any material and highly advertised component of the
9  PS3. Further, Sony did not disclose its intention to forbid users from accessing
10  sections of the Consoles hard drive after installation of Update 3.21.  To the
11  contrary, Sony actively touted the PS3s as providing a multifunctional use.  Any
12  claimed reserved rights of Sony to remove the OS Feature are not disclosed in the
13  Terms of Service or System Software License Agreement.

14                        Sony Disables the OS Feature

15      39.    Sony's PS3 Quick Reference manual provides "[b]y updating the
16  PS3™ system software, *you can add features* and/or security patches.  Frequently
17  update your system to use the latest version of the system software." [7]

18      40.    On or about March 28, 2010, Patrick Seybold, Senior Director of
19  Corporate Communications and Social Media of Sony released the following
20  information on Defendant's blog:[8]

21
22              The next system software update for the PlayStation 3 (PS3)
                system will be released on April 1, 2010 (JST), and will disable
23              the "Install Other OS" feature that was available on the PS3
                systems prior to the current slimmer models, launched in
24              September 2009. *This feature enabled users to install an*
                *operating system, but due to security concerns, Sony Computer*
25

26  [6] http://blog.eu.playstation.com/2010/03/29/ps3-firmware-3-21-coming-april-1st/
    [7] Sony PlayStation®3 Quick Reference, p.28 (emphasis added);
27  http://www.playstation.com/manual/pdf/PS3-01-1.0_1.pdf
    [8] http://blog.us.playstation.com/2010/03/28/ps3-firmware-v3-21-update/ (emphasis
28  added).

                                    -8-

1  *Entertainment will remove the functionality through the 3.21*
2  *system software update.*

3  In addition, disabling the "Other OS" feature will help ensure
   that PS3 owners will continue to have access to the broad range
4  of gaming and entertainment content from SCE and its content
   partners on a more secure system.
5

6  Consumers and organizations that currently use the "Other OS"
   feature can choose not to upgrade their PS3 systems, although
7  the following features will no longer be available:

8      • Ability to sign in to PlayStation Network and use network
9        features that require signing in to PlayStation Network,
         such as online features of PS3 games and chat
10     • Playback of PS3 software titles or Blu·ray Disc videos
         that require PS3 system software version 3.21 or later
11     • Playback of copyright·protected videos that are stored on
         a media server (when DTCP·IP is enabled under Settings)
12     • Use of new features and improvements that are available
         on PS3 system software 3.21 or later
13

14 For those PS3 users who are currently using the "Other OS"
   feature but choose to install the system software update, to
15 avoid data loss they first need to back·up any data stored within
   the hard drive partition used by the "Other OS," as they will not
16 be able to access that data following the update.
17

18 Additional information about PS3 firmware updates, including
   v3.21 (once it becomes available), can be found here:
19 http://us.playstation.com/support/systemupdates/ps3/index.htm

20 PS3 owners who have further questions should contact
   Consumer Services:
21 http://us.playstation.com/support/ask/
22 800·345·7669 (800·345·SONY)

23
       41.    On or about April 1, 2010, Defendant released Update 3.21 to address
24
   "security concerns" as previously stated by Patrick Seybold.  PS3 users that failed to
25
   install Update 3.21 lost access to the following features: [9]
26
              a.    The ability to sign into the PSN;
27
   ─────────────────────────────
28 [9] http://us.playstation.com/support/systemupdates/ps3/ps3_321_update1/index.htm

   b. The ability to use online features that require sign in to PSN, such as chat;

   c. The ability to use the online features of PSN format software;

   d. Playback of PS3 format software or Blu-Ray disc videos that require PS3 system software version 3.21 or later;

   e. Playback of copyright-protected videos that are stored on a media server; and

   f. Use of new features and improvements that are available on PS3 system software 3.21 or later.

  42. The capability of the PS3 to play Blu-Ray discs and online games through the PSN were unique features to the PS3 and material factors in consumers deciding to purchase such Consoles. Defendant's release of Update 3.21 immediately presented consumers with a Catch-22 decision between losing the ability to use their PS3 as a personal computer -- a selling feature highly touted by Sony -- or losing the ability to access Blu-Ray and gaming features online. Regardless of the decision, consumers are ultimately left with less than they originally bargained for in their original purchase of the PS3.

  43. On or about April 21, 2010, Defendant released firmware update 3.30 as a result of "[Sony's] continued effort to provide the best, most comprehensive entertainment experience possible []."[10] Defendant did not restore the OS Feature through firmware update 3.30.

  44. Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the internet is replete with examples of blogs and other websites where PS3 users have complained of the exact same problem with the Console.

_____

[10] http://blog.us.playstation.com/2010/04/21/ps3-3-30-system-software-update/

-10-

CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

45.     Harper and Kummer bring this action on behalf of themselves, and also seek to represent a class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3) of all persons in the United States who purchased a PS3 from November 17, 2006 through and including March 27, 2010 and continued to own the PS3 on March 27, 2010 (the "Class").

46.     Excluded from the Class is Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the PS3s for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify the Class definition if discovery and/or further investigation reveals that it should be expanded or otherwise modified.

47.     Numerosity: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process.

48.     Existence and Predominance of Common Questions of Fact and Law: Common questions or law and fact exist as to all members of the Class. These questions predominate over any questions that may apply to individual Class members. These common legal and factual questions include, but are not limited to:

      a.     Whether Defendant breached its contract with PS3 owners when it disabled and/or removed the OS Feature;

      b.     Whether Defendant breached the implied covenant of good faith and fair dealing;

      c.     Whether Defendant failed to disclose to users that it could/would remove the OS Feature;

      d.     Whether Defendant failed to disclose to users that it could/would

-11-

CLASS ACTION COMPLAINT

render a portion of the PS3 hard drive inaccessible to users by
disabling the OS Feature;

e.  Whether Defendant represented that firmware updates would not
disable the OS Feature;

f.  Whether Defendant's conduct violates California consumer protection
statutes;

g.  Whether Defendant's actions violated other common law and
statutory duties;

h.  Whether Plaintiffs and members of the Class are entitled to actual
damages representing the ascertainable loss of monies and/or
property and/or value that have been and/or will be suffered by
Plaintiffs and members of the Class as a result of Defendant's alleged
conduct;

i.  The amount of relief to which the Class is entitled; and

j.  The amount of attorneys' fees, prejudgment interest, and costs of suit
to which the Class is entitled.

49.    Typicality: Plaintiffs' claims are typical of the claims of the Class
because Plaintiffs and the Class sustained damages arising out of the Defendant's
wrongful conduct as detailed herein. Plaintiffs are advancing the same claims and
legal theories on behalf of themselves and all absent Class members.

50.    Adequacy: Plaintiffs are adequate representatives of the Class
because their interests do not conflict with the interests of the Class that they seek
to represent; they have retained counsel competent and highly experienced in
complex class action litigation; and they intend to prosecute this action vigorously.
The interests of the Class will be fairly and adequately protected by Plaintiffs and
their counsel.

51.    Superiority: A class action is superior to all other available means of

-12-
CLASS ACTION COMPLAINT

1    fair and efficient adjudication of the claims of Plaintiffs and members of the Class.

2    The injury suffered by each individual Class member is relatively small in

3    comparison to the burden and expense of individual prosecution of the complex and

4    extensive litigation necessitated by Defendant's conduct. It would be virtually

5    impossible for members of the Class individually to redress effectively the wrongs

6    done to them. Even if the members of the Class could afford such individual

7    litigation, the court system could not. Individualized litigation presents a potential

8    for inconsistent or contradictory judgments. Individualized litigation increases the

9    delay and expense to all parties, and to the court system, presented by the complex

10   legal and factual issues of the case. By contrast, the class action device presents far

11   fewer management difficulties, and provides the benefits of single adjudication,

12   economy of scale, and comprehensive supervision by a single court. There will be no

13   difficulty in the management of this action as a class action.

14       52.    Defendant has acted, and refused to act, on grounds generally

15   applicable to the Class, thereby making appropriate final equitable relief with

16   respect to the Class as a whole.

17       53.    Certification of the Class under the laws of California is appropriate

18   because:

19       (a)    Sony is a corporation conducting substantial business in and

20   from California;

21       (b)    Sony's principal and executive offices, as well as its corporate

22   headquarters, are located in California;

23       (c)    Decisions regarding Sony's representation and omissions

24   regarding the Console were made in California;

25       (d)    Sony's marketing, promotional activities and literature, as well

26   as its warranties, are coordinated at, emanate from, and/or developed at its

27   California headquarters;

28

-13-

CLASS ACTION COMPLAINT

(e)     The UCL and other claims asserted in this Complaint on behalf of the Class may be appropriately brought on behalf of California and out-of-state Class members; and

(f)     A significant number of members of the Class reside in the State of California.

## VIOLATIONS ALLEGED

### COUNT I

### VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, *ET SEQ.*

54.    Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as if such had been set forth in full herein.

55.    California's Consumer Legal Remedies Act ("CLRA") prohibits unfair methods of competition and unfair or "deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." CAL. CIV. CODE § 1770.

56.    Defendant is a "person" within the meaning of California Civil Code sections 1761(c) and 1770, and provides "goods" within the meaning of Civil Code sections 1761(a) and 1770.

57.    Defendant's customers, including Plaintiffs and Class members, are "consumers" within the meaning of California Civil Code sections 1761(d) and 1770. Each purchase of a PS3 system by Plaintiffs and each Class member constitutes a "transaction" within the meaning of Civil Code sections 1761(e) and 1770.

58.    Defendant engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally disabling the OS Feature through dissemination of Update 3.21 and in subsequently locking out users from accessing and/or using a section of the hard drive. These acts and practices violate, at a minimum, the following sections of the

-14-

CLRA:

(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

59.  The OS Feature was material and important to consumers in purchasing the PS3. Plaintiffs and Class members relied upon Defendant's representations that the PS3 included the capability of using it as a computer through the OS Feature.

60.  Defendant expressly stated in the PS3 manual that firmware updates would allow users to add features to their PS3. Defendant failed to disclose, and/or adequately disclose, that it could/would disable the OS Feature through the Update 3.21 and/or subsequent updates.

61.  Defendant's unfair and deceptive acts extend to consumer transactions, and caused injuries to Plaintiffs and Class members.

62.  Plaintiffs seek all relief available under the CLRA, however, do not seek damages at this time. Plaintiffs reserve the right to amend this pleading to seek damages after the statutory thirty (30) day period has run pursuant to the CLRA.

-15-

CLASS ACTION COMPLAINT

1

## COUNT II

2

### VIOLATION OF THE CALIFORNIA BUSINESS
3 AND PROFESSIONS CODE § 17200

4      63.    Plaintiffs incorporate by reference the allegations of all foregoing

5 paragraphs as if such had been set forth in full herein.

6      64.    The California Unfair Competition Law ("UCL") prohibits unfair

7 competition and unfair, unlawful or fraudulent business practices.

8      65.    Defendant has engaged in unfair competition and unfair, unlawful or

9 fraudulent business practices by the conduct, statements, and omissions described

10 above, and by knowingly and intentionally concealing from Plaintiffs and Class

11 members material information regarding the OS Feature and Defendant's intention

12 and/or capability to disable such feature after purchase. Defendant should have

13 disclosed this information because they were in a superior position to know the true

14 facts related to these representation and/or disclosures.

15      66.    These acts and practices have deceived Plaintiffs and are likely to

16 deceive the public. In failing to disclose the design defect and suppressing other

17 material facts from Plaintiffs and Class members, Defendant breached its duties to

18 disclose these facts, violated the UCL, and caused injuries to Plaintiffs and Class

19 members. The omissions and acts of concealment by Defendant pertained to

20 information that was material to Plaintiffs and Class members, as it would have

21 been to all reasonable consumers.

22      67.    The injuries suffered by Plaintiffs and Class members are greatly

23 outweighed by any potential countervailing benefit to consumers or to competition.

24 Nor are they injuries that Plaintiffs and Class members should have or could have

25 reasonably avoided.

26      68.    Defendant's acts and practices are unlawful because they violate,

27 *inter alia*, California Civil Code §§ 1668, 1709, 1710 and 1750 *et seq.*, and California

28 Commercial Code § 2313, and California Business and Profession Code § 17560.

-16-
CLASS ACTION COMPLAINT

69.     Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under CAL. BUS. & PROF. CODE § 17200.

## COUNT III

## VIOLATIONS OF FALSE ADVERTISING
## CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500

70.     Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as if such had been set forth in full herein.

71.     The conduct and actions of Defendant complained of herein constitute false advertising, in violation of the False Advertising Law ("FAL"). CAL. BUS. & PROF. CODE § 17500, *et seq.*

72.     Sony made material misrepresentations and failed to disclose and/or adequately disclose necessary information to consumers regarding the OS Feature, the PS3, and Defendant's right and/or intention to disable the OS Feature. Defendant knew or should have known that such a failure would cause reasonable consumers to purchase the PS3 in reliance upon misrepresentations and/or false advertising.

73.     Defendant intended for Plaintiffs and Class members to rely on these representations and Plaintiffs and Class members consequently did rely on Defendant's misrepresentations.

74.     Defendant committed such violations of the FAL with actual knowledge or knowledge fairly implied on the basis of objective circumstances.

75.     As a result of Defendant's wrongful conduct, Plaintiffs have suffered injury in fact and lost money and/or property.

COUNT IV

BREACH OF CONTRACT / BREACH OF DUTY OF GOOD
FAITH AND FAIR DEALING

76.     Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as if such had been set forth in full herein.

77.     Plaintiffs and Class members purchased the PS3 with the reasonable expectation that the OS Feature would (1) remain within the Console for the useable life of the product; (2) Defendant would not remove the OS Feature since it was a material feature of the Console; and (3) Defendant would not subsequently lock out users from accessing and/or using a section of the PS3 hard drive.

78.     Plaintiffs and Class members fulfilled any and all of their obligations under the contract by paying a purchase price for the PS3.

79.     Sony violated its contractual duty of good faith and fair dealing owed to Plaintiffs and Class members through release of Update 3.21. This immediately presented consumers with a Catch-22 decision between losing the ability to use their PS3 as a personal computer -- a selling feature highly touted by Sony -- or losing the ability to access Blu-Ray and gaming features online. Regardless of the decision, the consumer was ultimately left with less than they originally bargained for in their original purchase of the PS3. Defendant's actions constituted a breach of the implied covenant of good faith and fair dealing.

80.     As a result of Defendant's breach of its contractual obligations, Plaintiffs and the Class members have been damaged in the manner set forth herein.

81.     Sony is liable for those damages in an amount to be determined at trial, and should be enjoined from continuing to engage in these deceptive, unreasonable and unlawful practices as alleged herein.

-18-

CLASS ACTION COMPLAINT

## COUNT V

### UNJUST ENRICHMENT

82. Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as if such had been set forth in full herein. This claim is plead in the alternative to the breach of warranty claims.

83. Plaintiffs and Class members conferred a tangible economic benefit upon Defendant by purchasing the Consoles. Plaintiffs and Class members would have expected remuneration from the Defendant at the time this benefit was conferred had these buyers and lessees known of Defendant's intentions alleged herein.

84. Failing to require Defendant to provide remuneration under these circumstances would result in them being unjustly enriched at the expense of Plaintiffs and the Class.

85. Defendant was and continues to be unjustly enriched at the expense of Plaintiffs and Class members.

86. Defendant's retention (without an offsetting return payment) of the benefit conferred upon them by Plaintiffs and members of the Class would be unjust and inequitable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully request that this Court:

    A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

    B. appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

-19-

CLASS ACTION COMPLAINT

1        C.    award all actual, general, special, incidental, statutory, punitive,

2    treble and consequential damages to which Plaintiffs and Class members are

3    entitled;

4        D.    award pre-judgment and post-judgment interest on such

5    monetary relief;

6        E.    grant appropriate injunctive and/or declaratory relief;

7        F.    award reasonable attorney's fees and costs; and

8        G.    grant such further relief that this Court deems appropriate.

9

10   Dated: May 20, 2010                   Respectfully submitted,

11

12                                 By:

13                                    Rose F. Luzon (SBN 221544)
                                    SHEPHERD, FINKELMAN,
                                     MILLER & SHAH, LLP

14                                  401 West A. Street, Suite 2350
                                    San Diego, CA 92101

15                                  Telephone: (619) 235-2416
                                    Facsimile: (619) 234-7334

16                                  Email: rluzon@sfmslaw.com

17                                  Joseph G. Sauder

18                                  Matthew D. Schelkopf
                                    Benjamin F. Johns

19                                  CHIMICLES & TIKELLIS LLP
                                    One Haverford Centre

20                                  361 West Lancaster Avenue
                                    Haverford, PA 19041

21                                  Telephone: (610) 642-8500

22                                  Facsimile: (610) 649-3633
                                    E-mail: JGS@chimicles.com

23                                  MDS@chimicles.com
                                    BFJ@chimicles.com

24

25                                  Christopher G. Hayes
                                    LAW OFFICE OF

26                                   CHRISTOPHER G. HAYES
                                    225 South Church Street

27                                  West Chester, PA 19382
                                    Telephone: (610) 431-9505

28

CLASS ACTION COMPLAINT

Facsimile: (610) 431-1269
E-mail: chris@chayeslaw.com

JAMES C. SHAH (SBN 260435)
SHEPHERD, FINKELMAN,
  MILLER & SHAH, LLP
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
Email: jshah@sfmslaw.com

*Attorneys for Plaintiffs and
the Proposed Class*

CLASS ACTION COMPLAINT

# Exhibit A

## DECLARATION OF JEFFREY HARPER

I, Jeffrey Harper, declare under penalty of perjury as follows:

1.    I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information or belief, which I believe to be true.

2.    I am an adult citizen of the State of Michigan.  I reside in Berkley, Oakland County, Michigan, and I am a named Plaintiff in this litigation.

3.    I purchased a new Sony PlayStation®3 in or around January 2007 within the State of Michigan.

4.    To the best of my knowledge, information and belief, Defendant, Sony, is a Delaware corporation with its principal place of business and executive offices located in Foster City, San Mateo County, California.

I declare under penalty of perjury under the laws of the State of Michigan that the foregoing is true and correct.  Executed on this 19th day of May, 2010 within the State of Michigan.

_____ 5-2010
Jeffrey Harper

## DECLARATION OF ZACHARY KUMMER

I, Zachary Kummer, declare under penalty of perjury as follows:

1. I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information or belief, which I believe to be true.

2. I am an adult citizen of the State of Florida. I reside in Tampa, Hillsborough County, Florida, and I am a named Plaintiff in this litigation.

3. I purchased a new Sony PlayStation®3 in or around May 2008 within the State of Florida.

4. To the best of my knowledge, information and belief, Defendant, Sony, is a Delaware corporation with its principal place of business and executive offices located in Foster City, San Mateo County, California.

I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct. Executed on this 19th day of May, 2010 within the State of Florida.

Zachary Kummer